UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROGER H. KAYE, et al.,          :
                                :
    Plaintiffs,                 :
                                :
v.                              :    CASE NO. 3:10-CV-1546(RNC)
                                :
MERCK & CO., INC., et al.,      :
                                :
    Defendants.                 :

## RULING AND ORDER

On April 28, 2010, Dr. Roger Kaye's office received a fax inviting him to "participate in [a] telesymposium on important clinical information about schizophrenia and bipolar I disorder." The fax was sent by MedLearning, Inc. ("MedLearning") pursuant to a contract with Merck & Co., Inc. ("Merck").[1] Kaye and his office (together, the "plaintiffs") have sued Merck and MedLearning (together, the "defendants"), purporting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 447, as well as of Conn. Gen. Stat. § 52-570c.

Plaintiffs have moved for summary judgment. For reasons explained below, I agree with defendants that plaintiffs consented to the receipt of the fax. Accordingly, plaintiffs'

---

[1] The contract was actually entered into by Schering Corporation, a predecessor to Merck. This ruling and order will follow the parties' convention of simply referring to Merck.

1

motion for summary judgment is denied. Moreover, because no material facts are in dispute and because I conclude that plaintiffs cannot maintain their TCPA or state law claims as a matter of law, summary judgment will be granted in favor of the defendants.[2]

I. Background

A. Factual History

In December 2009, Merck hired MedLearning to manage a series of telesymposia discussing schizophrenia, bipolar disorder, and the use of Saphris, a nongeneric drug used to treat these conditions. As part of the agreement between Merck and MedLearning, the latter was responsible for "overall program management" of the telesymposia, including, inter alia, "recruit[ing] all participants from the list provided by the client." ECF No. 192-1, at 5.

To recruit physicians to participate, MedLearning employed callers to telephone physicians on a list provided by Merck.

---

[2] The plaintiffs attempted to pursue an interlocutory appeal of my decision denying their motion for class certification, which the Second Circuit denied. As a result, the case in its current posture involves no more than a single alleged TCPA violation, meaning that the amount in controversy is, according to plaintiffs, $5,000. Granting summary judgment without awaiting a motion by the defendants serves the parties' interests in moving this case to entry of an appealable judgment so that the class certification issue can be litigated before the Second Circuit.

The callers were instructed to request permission to send a fax invitation to the telesymposium using the following script:

> Hello, my name is _____ and I am calling from MedLearning to invite Dr. _____ to participate in a telesymposium, sponsored by Merck, entitled **Important Clinical Information about Schizophrenia and Bipolar Disorder**. We have several dates and times available. . . . **May I fax an invitation?** If Yes obtain the fax number. **(Request the name of the person giving permission and mark on record.)** Thank you for your time. We will fax the invitation.

On April 28, 2010, a MedLearning representative called Dr. Kaye's office and reached plaintiffs' answering service. The representative used the above script and was affirmatively given permission to fax the invitation. Later that same day, MedLearning faxed the invitation to plaintiffs' fax machine.

The invitation itself is titled "Important Clinical Information about Schizophrenia and Bipolar I Disorder." Immediately under the title, in large typeface, are the words "You are invited!" and the Merck logo and name. Farther down, the invitation states: "This speaker program is sponsored and provided by Merck," "The presenter is speaking on behalf of Merck," and "The content of this speaker program is consistent with FDA labeling and advertising regulations." The invitation stated that the recipient could be "removed from the fax list for this program," either by initialing and returning the form by fax or by calling a phone number. ECF No. 192-3, at 10.

Plaintiffs allege that their fax machine used paper to print out the invitation, the machine was occupied while the invitation was being transmitted, and the receipt of the invitation annoyed Dr. Kaye and wasted his time. For present purposes, these allegations are accepted as true and construed most favorably to plaintiffs.

B. <u>Procedural History</u>

Plaintiffs filed this suit on September 29, 2010. Discovery was broadly stayed except for discovery relevant to the class certification issue. On January 26, 2014, I ruled that the stay would remain in effect as to any additional discovery pending the outcome of proceedings before the Federal Communications Commission concerning the Commission's regulation of faxes under the TCPA. <u>See</u> ECF No. 114. The FCC issued an order on October 30, 2014, and both Merck and Kaye were among those petitioning the D.C. Circuit for review. On March 31, 2017, the D.C. Circuit vacated the FCC's order, holding that the FCC lacked authority to require businesses to include opt-out notices on solicited faxes. <u>See</u> ECF No. 143; <u>Bais Yaakov of Spring Valley v. FCC</u>, 852 F.3d 1078 (D.C. Cir. 2017).

On March 29, 2019, I granted defendants' motion to strike the complaint's class allegations, holding that "[d]efendants have demonstrated that these claims do not provide a basis for certifying a class because, in view of the consent protocol used

4

by MedLearning, determining whether a recipient consented to receive a fax would require an individualized inquiry." ECF No. 171. Plaintiffs sought to appeal the ruling to the Second Circuit, see ECF No. 176, and were rebuffed, with the Second Circuit concluding that "an immediate appeal is not warranted," see ECF No. 179. On October 30, 2019, plaintiffs filed a motion for summary judgment, which is now ripe for adjudication.

## II. Legal Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). "Disputed legal questions present nothing for trial and are appropriately resolved on a motion for summary judgment." FDIC v. Haines, 3 F. Supp. 2d 155, 159 (D. Conn. 1997) (quoting Flair Broadcasting Corp. v. Powers, 733 F. Supp. 179, 184 (S.D.N.Y. 1990)); see also Schoenefeld v. Schneiderman, 821 F.3d 273,278-79 (2d Cir. 2016) (noting that "purely legal questions" are "particularly conducive to disposition by summary judgment").

It is occasionally, albeit rarely, appropriate for a court to enter summary judgment against a moving party. See Bridgeway

5

Corp. v. Citibank, 201 F.3d 134, 139-40 (2d Cir. 2000). Before doing so, a court must be sure that there is no "indication that the moving party might otherwise bring forward evidence that would affect the . . . determination," such that "the facts before the district court [are] fully developed so that the moving party suffer[s] no procedural prejudice." Id. (quoting Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991)). "A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position." Id. To avoid any prejudice, prior to granting summary judgment against a moving party, the court must view all evidence in favor of the moving party. Hollander v. Steinberg, 419 Fed. App'x 44, 45 (2d Cir. 2011) (quoting NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 179 (2d Cir. 2008)).

As the Second Circuit has noted, "the threat of procedural prejudice is greatly diminished if the court's sua sponte determination is based on issues identical to those raised by the moving party." Bridgeway Corp., 201 F.3d at 139-40 (quoting Snider v. Melindez, 199 F.3d 108, 113 (2d Cir. 1999)). Thus, "where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a sua sponte grant of summary judgment against that party may be appropriate

if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." Id. (citing Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996)).

In this case, there is no claim, nor any basis for a claim, that granting summary judgment against the moving party would cause unfair prejudice. During a conference on September 17, 2019, plaintiffs were informed that, in order to avoid unwanted expense and delay in this ten-year-old case, the legal sufficiency of their claims might well be determined on the basis of their summary judgment motion alone. See Def. Mem., ECF No. 202, at 5; ECF No. 187. As will be discussed below, the dispositive issue here is purely legal, the relevant facts are undisputed, and the issue has been fully litigated. See Bridgeway Corp., 201 F.3d at 139-40. Accordingly, there is no need to delay entry of summary judgment.

### III. Discussion

The parties do not dispute that a MedLearning representative called plaintiffs, spoke with plaintiffs' answering service, received affirmative permission to fax an invitation to the telesymposia, and subsequently did so. See, e.g., ECF No. 203 (plaintiffs' response to defendants' statements of fact, disclosing essentially no substantive objections). Defendants have stipulated, at least for present

purposes, that the faxed invitation was an advertisement. See ECF No. 189.

The only remaining issue as to liability, as indicated by the parties' briefing, is whether the faxed invitation was within the scope of the consent granted by plaintiffs' answering service.[3] This is a question of law. See, e.g., Golan v. Veritas Entm't, LLC, No. 4:14-cv-00069 ERW, 2017 WL 193560, at *3 (E.D. Mo. Jan. 18, 2017) ("Whether consent to call about religious freedom is also consent to receive calls about a movie is a legal question . . . ."); Payton v. Kale Realty, LLC, 164 F. Supp. 3d 1050, 1064 (N.D. Ill. 2016) (referring to the question of "whether the three emails in which Payton provided his cellular number to Patterson amount to prior express consent for Kale to send Payton a text message" as "a legal question"); Agne v. Papa John's Intern., Inc., 286 F.R.D. 559, 567 (W.D. Wash. 2012) (referring to the question of "whether a customer's prior purchase of pizza can be construed as express consent to receive text message advertisements under the TCPA" as a "legal question").

Both the TCPA and Conn. Gen. Stat. § 52-570c apply only to unsolicited faxes. The TCPA makes it unlawful for any person

---

[3] The plaintiffs do not dispute that their answering service had actual or apparent authority to consent to the receipt of the fax. See generally Plf. Mem., ECF No. 194; see also Def. Mem. at 7.

8

"to send, to a telephone facsimile machine, an unsolicited advertisement," except in some circumstances. 47 U.S.C. § 227(b)(1)(C). Connecticut's analogue provides that "[n]o person shall use a machine that electronically transmits facsimiles through a connection with a telephone network . . . to transmit unsolicited advertising material." Conn. Gen. Stat. § 52-570c(a).[4]

The gravamen of plaintiffs' argument is that "obtaining prior express invitation or permission to send a fax does not satisfy the requirement to obtain prior express invitation or permission to send a fax advertisement." Plf. Mem. at 9. Therefore, plaintiffs argue, because "the script [used] to obtain permission to send . . . the Telesymposium Invitation did not affirmatively reveal that the [invitation] was to a

---

[4] The parties disagree as to which side has the burden of proof on the issue of consent. Plaintiffs cite a number of cases stating that consent is an affirmative defense for which the defendant bears the burden. Defendants respond that the cases cited involve phone calls governed by 47 U.S.C. § 227(b)(1)(A), as opposed to fax cases governed by § 227(b)(1)(C), which prohibits only "unsolicited advertisement[s]." Both the Seventh and Ninth Circuits have held, in fax cases, that consent or permission is an affirmative defense. See Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC, 950 F.3d 959, 964 (7th Cir. 2020); True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 931 (9th Cir. 2018). See also Gorss Motels, Inc. v. American Tex-Chem Corp., 323 F. Supp. 3d 330, 336 (D. Conn. 2018) (defendant in fax case did not meet its burden on issue of consent). I assume the Second Circuit would agree with its sister Circuits and conclude that defendants have the burden of proof.

9

telesymposium at which Merck's drug Saphris . . . [was] going to be advertised," defendants violated the TCPA. Id. Merck responds that its fax was well within the scope of plaintiffs' consent and that "[a]ny reasonable person – and certainly any reasonable medical doctor – would understand that a medical seminar <u>sponsored by a pharmaceutical company</u> would discuss the efficacy of the company's drugs." Def. Mem. at 11.

I agree with defendants. In agreeing to receive a faxed invitation to a telesymposium sponsored by Merck, plaintiffs consented to the receipt of an advertisement as a matter of law because no reasonable person could believe otherwise. Businesses, after all, "usually do not fund presentations for no business purpose." <u>Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.</u> ("<u>Boehringer Ingelheim</u>"), 847 F.3d 92, 95 (2d Cir. 2017). Because defendants obtained plaintiffs' consent to send an advertisement, they cannot be held liable for sending an "unsolicited" advertisement in violation of the TCPA and Conn. Gen. Stat. § 52-570c(a).

I start with the definition of an "unsolicited advertisement" under the TCPA. As both parties acknowledge, this question is controlled by FCC regulations and the Second Circuit's decision in <u>Boehringer Ingelheim</u>. The FCC has stated that "facsimile messages that promote goods or services even at no cost, such as . . . free consultations or seminars, are

unsolicited advertisements under the TCPA's definition." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006). In Boehringer Ingelheim, the Second Circuit held that the FCC definition above "comports with the statutory language," but noted that "not every unsolicited fax promoting a free seminar [is an advertisement]. There must be a commercial nexus to a firm's business." 847 F.3d at 95-96.

One of the ironies in this case is that plaintiffs are happy to take Boehringer Ingelheim for its holding, which unambiguously compels the conclusion that defendants' faxed invitation here was an advertisement, while defendants hope to persuade the Second Circuit to overturn Boehringer Ingelheim on appeal. But the case cuts the other way, too. If, as the Second Circuit has indicated, a fax from a pharmaceutical company inviting a physician to a free seminar is an advertisement, it is unclear to me how agreeing to receive such a fax is not agreeing to receive an advertisement. Consider the following key paragraph from Physician's Healthsource, modified only by substituting "script" for "fax" to reflect that, in this case, defendants sought permission prior to sending the fax:

> Boehringer's [script] advertised a "dinner meeting" to discuss two medical conditions—Female Sexual Dysfunction (FSD) and Hypoactive Sexual Desire Disorder (HSDD)—and their "pathophysiology models, epidemiology, and diagnosis." J. App'x at 24. As a pharmaceutical company,

11

> Boehringer was generally in the business of treating diseases and medical conditions, such as FSD and HSDD. Moreover, the [script] makes clear to the invitee that the dinner meeting was "sponsored by Boehringer Ingelheim Pharmaceuticals, Inc." Id. The [script] was sent to a doctor, whom Boehringer would presumably hope to persuade to prescribe its drugs to patients. Therefore, facts were alleged that Boehringer's [script] advertised a free seminar relating to its business.

Id. at 97. In other words, if a fax containing that combination of information is sufficient to be an advertisement, a script containing the exact same combination of information – like the one used by defendants here - is sufficient to alert a party that they are consenting to receive an advertisement.

Plaintiffs' arguments to the contrary are unconvincing. They argue that the invitation "did not affirmatively reveal" that "Merck's drug Saphris or any other good, product or services were going to be advertised" at the telesymposium. But they fail to demonstrate that either the TCPA or Connecticut law requires such a specific disclosure. Such information is not necessary to make a faxed document an advertisement for the purposes of the TCPA, see id. at 95-97, and plaintiffs provide no authority for the proposition that a party seeking permission to send an advertisement must disclose more information than the advertisement itself contains. I am persuaded that no reasonable person, and in particular, no reasonable doctor's office, would mistake an invitation for a symposium sponsored by a pharmaceutical company for anything other than what it was.

12

The cases cited by plaintiff are broadly distinguishable, and most simply stand for the truism that a defendant is liable for violations of the TCPA if the defendant sends an unsolicited advertisement. None provides support for plaintiffs' argument that a defendant seeking permission to send an advertisement must explicitly use the word "advertisement" or describe the products to be advertised.

Plaintiffs first cite to the factual background section of the opinion in Bais Yaakov of Spring Valley v. Educational Testing Service, 367 F. Supp. 3d 93 (S.D.N.Y. 2019), where the court noted that "ETS exchanged faxes with Plaintiff as a part of that business relationship. However, Plaintiff never gave prior express permission or invitation to ETS, HMH, or anyone else to send Plaintiff fax advertisements." Id. at 102 (citations to the record omitted). To the extent a rule of law can be derived from this portion of the court's opinion, the most plaintiff-friendly version of the rule is that consent to receive a faxed advertisement cannot be presumed from an ongoing business relationship involving faxes. That rule has no bearing on this case. Plaintiffs here gave "prior express permission or invitation" to defendants to fax an advertisement. See id.

Physicians Healthsource, Inc. v. A-S Medication Solutions LLC, 324 F. Supp. 3d 973 (N.D. Ill. 2018), is distinguishable on much the same grounds. There, defendants sought to prove

13

consent by demonstrating that they had previously received permission to fax specific, discrete documents to the plaintiffs.  Id. at 979-81.  The court correctly rejected this evidence as irrelevant to the issue of consent to receive faxed advertisements, but that holding is inapposite for the reasons discussed above.  Somewhat closer to the mark is the court's conclusion that the plaintiffs did not consent to receive faxed advertisements by adding a fax number into defendants' Salesforce portal.  But, as the court noted, by doing so, "[t]he customer may have simply been filling in all of the blanks or may have intended only to receive ordinary fax messages in the course of business."  Id. at 980.  Here, by contrast, plaintiff specifically consented to the receipt of a discrete advertisement.[5]

In Physician's Healthsource, Inc. v. Stryker Sales Corp., "no one – not Plaintiff or any of its employees – gave any

---

[5] For the same reasons, the Seventh Circuit's decision in A-S Medication Solutions is also inapposite.  See Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC, 950 F.3d 959.  Plaintiffs incorrectly suggest that "[t]he evidence of purported prior express permission or invitation that Defendants' have offered in this case is even weaker than the evidence" rejected by the Seventh Circuit.  Plf. 1st Supp. Mem., ECF No. 210, at 3.  In A-S Medication Solutions, defendants relied on the fact that they had received permission in the past to send specific faxes, as well as the fact that the plaintiffs had not checked a box on Salesforce opting out of receiving faxes.  Here, defendants asked for and received permission to send an invitation to a symposium sponsored by Merck, i.e., an advertisement.

14

direct consent to the sender of the fax at issue here." 65 F. Supp. 3d 482, 497 (W.D. Mich. 2014). Here, plaintiff consented to the receipt of the fax. Likewise, the defendants in Physician's Healthsource, Inc. v. Allscripts Health Solutions, Inc., No. 12-cv-32333, 2017 WL 2391751 (N.D. Ill. June 2, 2017), were able to muster no proof of express permission, unlike the defendants here. Id. at *9. And in Bias Yaakov of Spring Valley v. Richmond, the American Inter. Univ. in London, Inc., No. 13-cv-4564, 2014 WL 4626230 (S.D.N.Y. Sept. 16, 2014), there was no dispute that the fax was unsolicited – the legal issue decided by the court was whether it was an advertisement. See generally id.

Finally, plaintiffs' supplemental citation to Judge Meyer's recent decisions in Gorss Motels Inc. v. Sprint Commc'ns Co., No. 3:17-cv-546 (JAM), 2020 WL 818970 (D. Conn. Feb. 19, 2020), reconsideration denied 2020 WL 1303175 (D. Conn. Mar. 19, 2020), are also unavailing. The defendants in that case relied on the fact that "Gorss at various times gave Wyndham its fax number for general business purposes," that "Gorss's fax number was published in Super 8 motel directories," and that Sprint "was Gorss's long distance telephone service provider." 2020 WL 818970, at *2-3. Judge Meyer held that these facts were insufficient to demonstrate that Gorss had consented to the receipt of fax advertisements. Id. Here, once again,

15

plaintiffs specifically consented to the receipt of the advertisement in question.

Plaintiffs' other argument as to liability revolves around the deficiencies in the opt-out notice on the fax, which defendants essentially concede were "not technically compliant with FCC regulations," but nonetheless "gave an adequate, easy and free means of opting out of future faxes." Def. Mem. at 16. I have previously dismissed plaintiffs' opt-out claims on the basis of the D.C. Circuit's decision in <u>Bais Yaakov of Spring Valley v. FCC</u>, 852 F.3d 1078. <u>See</u> ECF No. 170 ("The motion to dismiss the claims against Merck for violating the FCC's opt-out regulation is granted based on the D.C. Circuit's decision in <u>Yaakov</u> invalidating the regulation."). Those claims fare no better here: the opt-out regulations do not apply – indeed, the TCPA does not apply – to solicited faxes. <u>See</u> <u>Bias Yaakov of Spring Valley v. FCC</u>, 852 F.3d at 1081 (Kavanaugh, J.) ("The FCC says that the [TCPA's] requirement that businesses include opt-out notices on <u>unsolicited</u> fax advertisements grants the FCC the authority to also require businesses to include opt-out notices on <u>solicited</u> fax advertisements – that is, those advertisements sent with the permission of the recipient. We disagree with the FCC."); <u>Cochran v. Massey</u>, No. 3:12-cv-765, 2014 WL 335288, at *2 (S.D. Ill. Jan. 30, 2014) ("The question of permission or consent is . . . dispositive . . . under the TCPA."). <u>See also</u>

16

A-S Medication Solutions, 950 F.3d at 964 (acknowledging that express permission defeats a TCPA claim even in the absence of an opt-out notice).[6]

## IV. Conclusion

Accordingly, plaintiffs' motion for summary judgment is hereby denied. Summary judgment is instead granted in favor of defendants. The Clerk may enter judgment dismissing the action and close the case.

So ordered this 27th day of March 2020.

_____/s/_____
Robert N. Chatigny
United States District Judge

---

[6] Because I conclude that summary judgment in defendants' favor is appropriate on the issue of liability, it is unnecessary to reach the parties' arguments as to damages. Similarly, the plaintiffs' consent fully resolves the state law claim.